```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____
```

MICHAEL GUMAER,

                        Plaintiff,

v.                                                                         3:12-CV-1430
                                                                          (GTS)

CAROLYN W. COLVIN, Acting Comm'r of Soc. Sec.,

                        Defendant.
```
_____
```

APPEARANCES:                                                OF COUNSEL:

LACHMAN & GORTON                            PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.            ELIZABETH D. ROTHSTEIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Michael Gumaer ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings, as well as Plaintiff's reply brief, which was filed with permission of the Court. (Dkt. Nos. 12, 13, 16.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on October 18, 1967.  Plaintiff has completed education through the eighth grade, earned his general equivalency diploma, and completed a few semesters of college. He is able to communicate in English.  Plaintiff has worked for brief periods of time as a dishwasher and as a chef in fast food restaurants.  Generally, Plaintiff's alleged disability consists of Guillian-Barre syndrome, diabetes and depression.  His alleged disability onset date is October 13, 1993.

   B.   **Procedural History**

On November 24, 2009, Plaintiff applied for Supplemental Security Income.  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On January 4, 2011, Plaintiff appeared before the ALJ, Barry E. Ryan.  (T. 23-34.)  On February 14, 2011, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 6-22.)  On July 24, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 11-17.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date.  (T. 11.)  Second, the ALJ found that, at all relevant times, Plaintiff's Guillian-Barre syndrome and diabetes were severe impairments.  (T. 11-14.) Third, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 14.)  The ALJ

considered Section 11.00 of the Listings.  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b).  Specifically, the ALJ found that Plaintiff can "lift and/or carry 20 pounds occasionally, ten pounds frequently, sit for six hours in an eight-hour day, stand for six hours in an eight-hour day, and walk for six hours in an eight-hour day."  (T. 14-16.)  The ALJ further concluded that Plaintiff "has no mental, postural, environmental, communicative, visual or manipulative limitations."  (*Id*.)  Fifth, the ALJ found that Plaintiff has no past relevant work.  (T. 17.)  Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.  (*Id*.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ erred in assessing medical opinions regarding his tremors and manipulative limitations. (Dkt. No. 12 at 10-14 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ failed to properly assess his credibility.  (*Id.* at 14-18.)  Third, Plaintiff argues that the ALJ failed to consider lay witness testimony.  (*Id*. at 18.)  Fourth, and finally, Plaintiff argues that the ALJ failed to consider the combined effects of his impairments and incorrectly assessed his RFC.  (*Id.* at 18-19.)

### B.     Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues that the ALJ properly considered the medical opinions of record and that Plaintiff's RFC is supported by substantial evidence. (Dkt. No. 13 at 4-13 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 13-16.)

In reply to Defendant's response, Plaintiff makes two arguments. First, Plaintiff argues that Defendant admits that the ALJ mischaracterized the medical evidence, but fails to correctly analyze the effect of this failure at each step of the ALJ's determinations. (Dkt. No. 16 at 1-3 [Pl.'s Reply Mem. of Law].) Second, Plaintiff argues that the Defendant would have the Court improperly re-weigh the evidence or accept Defendant's lay opinion regarding the limiting effect of Plaintiff's hand tremor. (*Id.* at 3-4.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is

5

> afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Assessed the Medical Opinions Regarding Plaintiff's Tremors and Manipulative Limitations

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12 at 10-14 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

The ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). Where, as here, the ALJ does not give controlling weight to a treating source opinion, the ALJ must evaluate each medical opinion based on factors such as the examining relationship, whether the opinion comes from a specialist, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. *See id.* Unless there is a treating source opinion, which is given controlling weight, an ALJ's failure to explain the weight given to the opinion of a State agency medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y.2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y.2006).

Plaintiff argues that the ALJ's assessment of the opinion of consultative examiner, Augustus Valmond, M.D., is erroneous because, among other reasons, it was based on a misunderstanding of a medical term used by Plaintiff's neurologist, Sowbhagya L. Sonthineni, M.D. Defendant concedes the ALJ's error but argues that his determination was nonetheless supported by substantial evidence.

The record includes treatment notes from Plaintiff's primary care doctor, John Wacendak, M.D. On May 5, 2008, when conducting a neurological examination of Plaintiff, Dr. Wacendak noted that Plaintiff was able to perform finger-to-nose and knee-to-shin testing, but slowly, and that he was unsure of Plaintiff's effort in that regard. (T. 169.) Dr. Wacendak noted that Plaintiff's chronic tremor seems to be a benign essential tremor and that he will try to get a second opinion from Dr. Sonthineni. (*Id.*)

On May 14, 2008, Plaintiff underwent a neurological examination by Dr. Sonthineni. Dr. Sonthineni recorded his finding of abnormal musculoskeletal movements, as follows: "Mild tremor noted with intention." (T. 184.) Dr. Sonthineni opined that "Patient has numbness, tingling and weakness in lower extremities along with decreased sensory perception to pinprick and vibration. Patient may be suffering from peripheral neuropathy vs status post G[u]illian Barre [s]yndrome." (T. 185.) The ALJ's interpretation of this record evidence is that, while Dr. Sonthineni observed that Plaintiff exhibited a mild tremor in his hands, he noted that "*this appeared intentional and the neurological examination was otherwise normal*." (T. 15 [dual emphasis in original].)

On January 12, 2010, Dr. Valmond conducted an internal medicine exam of the Plaintiff. Dr. Valmond also noted Plaintiff's hand tremors. (T. 200.) In addition, regarding Plaintiff's fine motor activity, Dr. Valmond noted that Plaintiff "was able to button and tie, but very slowly."

(T. 201.) Dr. Valmond concluded that Plaintiff "has moderate limitation for standing, walking, climbing stairs, bending, lifting, and carrying. He also has moderate limitation for handling objects and activities requiring fine manipulations due to his tremors." (*Id.*)

The ALJ acknowledged these conclusions and noted that Dr. Valmond's "opinion must be given considerable weight in determining [Plaintiff's] *exertional* limitations because it is a medial opinion and is supported by Dr. Valmond's findings upon examining [Plaintiff.]" (T. 16 [emphasis in original].) In the very next sentence, the ALJ states, "However, Dr. Valmond's conclusion that [Plaintiff] has moderate limitations in handling objects and performing activities requiring fine manipulation has been given very little weight for the following specific reasons." (*Id.*) First among the ALJ's cited reasons for assigning very little weight to Dr. Valmond's opinion is that "[*Plaintiff's] primary care physician questioned [Plaintiff's] efforts during neurological examination and consistent with that, [Plaintiff's] neurologist noted that [Plaintiff's] hand tremors appeared to be intentional.*" (*Id.* [dual emphasis in original].)

Plaintiff points out, and Defendant concedes, that an intention tremor is part of a sub-classification of an action tremor, which is present during a purposeful movement toward a target, such as touching a finger to one's nose during a medical exam. (*See* Dkt. No. 12, at 1 [Pl.'s Mem. of Law]; Dkt. No. 13, at 5 [Def.'s Mem. of Law].) The ALJ's interpretation of Dr. Sonthineni's application of this term is clearly erroneous and has tainted the ALJ's review of the evidence as a whole. Accordingly, remand is necessary so that the ALJ may revisit his analysis of the record evidence, including the weight assigned to the opinion of consultative examiner, Dr. Valmond.

### B. Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12 at 14-18 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4)

type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id*.

Here, the ALJ concludes that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible. In support of this conclusion, the ALJ principally relies on Dr. Wacendak's May 5, 2008 treatment note, wherein, according to the ALJ's interpretation, Dr. Wacendak "questioned [Plaintiff's] effort and noted that the only abnormal finding was [Plaintiff's] hand tremor." (T. 15.) In addition, the ALJ noted that Dr. Sonthineni observed that Plaintiff's tremor "*appeared intentional*." (T. 15 [dual emphasis in original].)

Accordingly, because the ALJ's credibility assessment was tainted by his erroneous interpretation of the medical evidence, remand is necessary, so that, as indicated in Point IV.A. of this Decision and Order, the ALJ may revisit his analysis of the record evidence in light of the correct interpretation of the medical terms used by Plaintiff's physicians.

### C. Whether the ALJ Erred in Failing to Consider and Discuss Lay Witness Testimony

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12 at 18 [Pl.'s Mem. of Law].) The Court would only add the following brief analysis.

Plaintiff argues that the ALJ erred in failing to consider and discuss the written testimony of Plaintiff's friend, Blain Smith, regarding the effects of Plaintiff's medical conditions upon his level of functionality. Defendant counters that the ALJ is not required to mention or reconcile

every shred of evidence in the record, when the record allows the court to glean the rationale of his decision.

To be sure, where the record evidence permits the Court to determine the rationale of the ALJ's decision, the ALJ's failure to discuss specific evidence or explain why he considered it unpersuasive is not error. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983)). However, for the reason discussed in Point IV.A. of this Decision and Order, the Court is unable to glean the rationale of the ALJ's decision. Accordingly, on remand, the ALJ should re-evaluate all of the evidence in the record in light of the correct interpretation of the medical terms used by Plaintiff's physicians.

### D. Whether the ALJ Properly Calculated Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12 at 8-10 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations ... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, No. 12-CV-6640, 2013 WL 4647643, at *8

(W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)).  The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  *See* 20 C.F.R. §§ 404.1545(b)-(e).  The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may affect his ability to work.  *See* 20 C.F.R. § 404.1513(c)(d).

Plaintiff argues that the ALJ's RFC determination was erroneous because he failed to make a finding regarding Plaintiff's non-exertional impairments resulting from the side effects of his medication, and also because he failed to consider the effects of Plaintiff's mental conditions and hand tremor.

Here, the ALJ specifically found that Plaintiff "has no mental, postural, environmental, communicative, visual, or manipulative limitations" in support of his conclusion that Plaintiff has the RFC to perform a full range of light work.  (T. 14.)  To the extent the ALJ found no manipulative limitations without appropriately assessing the medical opinions of record, his RFC determination is erroneous for the reason discussed in Point IV.A. of this Decision and Order.

Regarding the effects of his mental conditions, Plaintiff points to the examination note of consultative examiner, Dennis M. Noia, Ph.D., that Plaintiff "appears to be having some difficulty dealing with stress."  (T. 197.)  In finding that Plaintiff's depression is not a severe impairment, the ALJ extensively discussed and considered Dr. Noia's opinion.  (T. 12-13.)  The ALJ specifically noted Dr. Noia's opinion about Plaintiff having some difficulty dealing with stress.  To be sure, he also noted that Dr. Noia found that Plaintiff appears to be capable of (1) understanding and following simple instructions and directions; (2) performing simple and some complex tasks with supervision and independently; (3) maintaining attention and concentration

12

for tasks; (4) learning new tasks; (5) making appropriate decisions; (6) regularly attending to a routine and maintaining a schedule; and (7) relating to and interacting moderately well with others. (T. 13, 197.) However, when determining the Plaintiff's RFC, the ALJ is required to consider all of Plaintiff's medically determinable impairments including those that are not severe. *See Tudor v. Comm'r of Soc. Sec.*, No. 12-CV-2795, 2013 WL 4500754, at *11 (E.D.N.Y. Aug. 21, 2013) (citing 20 C.F.R. § 404.1545(a)(2)). Here, in determining Plaintiff's RFC, the ALJ did not appear to consider the medical evidence regarding Plaintiff's mental limitations. Therefore, on remand, the ALJ should be sure to explain his conclusions in that regard.

Finally, Plaintiff argues that the ALJ erred in failing to consider the opinion of Licensed Clinical Social Worker, Valerie Hotchkiss, that Plaintiff's medication was causing increased shaking in his hands. To be sure, the ALJ did consider Ms. Hotchkiss's opinion in finding that Plaintiff's depression was not severe, but appropriately gave it little evidentiary weight because a Licensed Clinical Social Worker is not an acceptable medical source for purposes of determining the existence of a medically determinable impairment. *See Wright v. Colvin*, No 12-CV-0440, 2013 WL 3777187, at *4 (N.D.N.Y. July 17, 2013) (citing 20 C.F.R. § 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. 2006)). However, evidence from such "other sources" as a Licensed Clinical Social Worker "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Accordingly, on remand, when the ALJ conducts his RFC analysis, he may consider this evidence.

For the foregoing reasons, remand is necessary so that the ALJ may reevaluate his RFC analysis after appropriately assessing the medical opinions of record and the effects of all of Plaintiff's impairments, including those that are not severe, on his functional abilities.

13

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: February 24, 2014
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge